This morning is 21-10117, United States v. Jones, Ms. Barlow. If the District Court's order is allowed to stand, Cedric Jones will spend seven years in prison for something that isn't a crime. The government recognizes that his unconstitutional conviction is, quote, problematic, but argues that he waived his right to challenge it in his plea agreement. Today, I want to focus on two paths to relief for Mr. Jones that remain available to this court. The first relies on principles of contract enforcement, and the second relies on principles of contract interpretation. As a matter of contract enforcement, when a defendant pleads guilty to something that is a crime or agrees to serve a sentence that exceeds the statutory maximum, the District Court lacks the authority to approve that plea, and the agreement is invalid. That invalid agreement cannot be enforced against the defendant, including any waivers that it contains. As a matter of contract interpretation, under this court's cases in White and Leal, a plea agreement that waives the right to contest one's conviction or sentence is too general to encompass a challenge to the statute of conviction's constitutionality or a challenge that the sentence exceeds the statutory maximum. With that overview, I'd like to go into a little more detail on our contract enforcement argument. Under this court's decision in United States v. Kim, plea waivers in a plea agreement that includes a sentence that exceeds the statutory maximum are unenforceable, and as I'll explain, the principles that underlie that rule apply with equal force, if not more, if the conviction itself is unconstitutional. And that remains true even if the courts had not yet recognized at the time that the statute is unconstitutional. Let me ask you as a contractual matter. You're seeking to undo the plea agreement, is that correct? That's right, yes. So that means that your client would be subject to all of the charges that were dismissed. Under paragraph 9 of his plea agreement, because one of his convictions would be vacated, the government would be freed from its obligations under the plea agreement. And would he be subjected potentially to a longer sentence for those violations or those crimes? So the government would have no contractual obligation not to pursue the two dismissed counts that it dismissed as part of this plea agreement. I do think it's unlikely that he would end up with a longer sentence overall because that would only happen if the government came back with all of the counts against him. And there's just no reason he would plead guilty to that. So it's possible that he could end up with the same sentence, but because the government would be starting from a different bargaining position than it was at the outset of this criminal proceeding, we would expect that he would receive a lower sentence. Why do you say there's no possibility that he would plead to those other charges? I just mean to say that the only consideration that the government gave as part of this plea agreement at the outset was dropping two of the counts. And so under normal contract bargaining principles, it's unlikely that he would agree to plead guilty to every single count because he'd be receiving nothing in exchange. Returning to the contract enforcement argument, I think that the key reason that this plea agreement exists is that it includes an agreement to stand convicted for conduct that the law does not deem criminal, and that is an unenforceable term. As this court recognized in Layal— Is that an argument that would apply to all sort of Davis issues, if you will? All Davis issues— All convictions that were rendered pursuant to pre-Johnson, pre-Davis law, but then of Would your argument extend to all those types of cases? I think it would apply to all Davis convictions where the predicate crime of violence cannot rely on the elements clause. Right. Yes. Have we dealt with that issue in cases like Caldwell? I don't think that Caldwell— In other words, is this more of an argument for our own bond court, or are you saying that you have a theory for dealing with Caldwell? I don't think Caldwell forecloses relief for Mr. Jones. We do recognize that it makes his miscarriage of justice argument, the third argument in our brief, very hard to make to a panel, but because neither the district court nor the parties nor this court addressed either our contract interpretation or contract enforcement arguments, it's our position that Caldwell does not foreclose relief on either of those grounds for Mr. Jones. Okay. So just to understand your position, the result in Caldwell would be inconsistent with what you're asking for, but you're saying the specific theories that you're presenting were not presented in Caldwell. Is that fair? Yes. I'm not pointing to any factual distinctions from Caldwell. However, even in the face of the decision in Caldwell, the court specifically provided that Caldwell did not contest that the waiver provision there applied to his claim. This does raise sort of a potentially, if nothing else, academically interesting question about the nature of precedent. Certainly we don't say that a case is not presidential because a particular specific case law wasn't cited in one opinion. In that narrow situation, we would say, sorry, the previous counsel may not have been as talented as you, but you're still bound by the precedent. I assume you agree with that. I do. I think for the contract interpretation argument, though, by the court's own language in Caldwell, it's preserved for us to pursue in this case because the court notes expressly in the opinion that Mr. Caldwell didn't challenge whether the text of the waiver covered his 2255 motion. And because it's our position that the language of the waiver is too general here, I think Caldwell contemplates that that argument remains available to us. Well, let's talk about that. Why is the Caldwell language any more specific? And the other case I might talk about is Brooks, which admittedly is unpublished. But putting that aside, since Brooks seems to be faithfully following Caldwell, doesn't Brooks have pretty generic language as well? I don't mean to point to a distinction in the language. It's just that it does return to your point about the nature of precedent and whether defendants can bring new arguments that are not addressed by a prior opinion for a result that might otherwise seem inconsistent. But we're here on habeas review, right? We are on the 2255 motion, yes, Your Honor. So let's set aside, how does your contract argument fit in habeas review? So our contract argument relies on the fact that this plea agreement contains an illegal term, that's the illegal conviction, and that that sinks the entire plea agreement. So that applies equally to the provision waiving direct review as it does to the provision waiving collateral review. But you could have raised on direct appeal that the conviction was invalid and void and there's no crime. You could have raised that on direct appeal and your client could have. The government hasn't made any argument that the underlying 924C claim, the void for vagueness claim, is procedurally defaulted and it's their burden to invoke procedural default in that respect. I think that they recognize that the 924, in recognizing that the 924C conviction is invalid, I think that the government essentially concedes that the contract contains an illegal term and their argument that the waiver provision should still stand is essentially a contention that the offending conviction here is severable from the remainder of the plea agreement. And that just gets basic principles of contract law and severability wrong. A term is only severable from an agreement if it's not essential to the party's bargain and it's hard to think of a term that is more essential to a plea agreement than the agreement by the defendant to stand convicted of a particular crime. Tell me the statutory language that will permit your client to make this argument on habeas review. The statutory language that allows him to... So the challenge is to the 924C conviction, it's a motion to vacate his sentence, which has been repeatedly held to also cover a motion to vacate the conviction. And I think that, the way I think of it at least, is that the government has raised the waiver provision in the plea agreement as a defense to that 2255 motion. The one other point I wanted to make on the severability discussion that I was just having is that this plea agreement in particular contemplates that it's not severable because in paragraph 9 it provides that if Mr. Jones violates any of the provisions of his agreement or if any of the convictions is vacated, the government is freed from all of its obligations, which I think just underscores the fact that all of the terms of this agreement rise and fall together. Of course, this court doesn't have to address the enforceability argument that we make if it concludes that the language is too general to encompass Mr. Jones' challenge to his conviction. Since White, the court has repeatedly held that a waiver of a right to appeal a conviction and sentence does not encompass the challenge that the conviction is unconstitutional or the sentence exceeds the statutory maximum. And that principle applies to this case by its own terms, but it also forms part of the legal landscape against which this plea agreement was negotiated. And so it tells us something about what the parties thought they were agreeing to at the time that they entered the agreement. What do you make of the fact that, I'm looking at paragraph 11, the relevant paragraph of the plea agreement, what do you make of the fact that there's an express preservation of the right to bring a direct appeal with respect to sentences exceeding statutory maximums, but it seems to have no such exception for collateral review, like 2255? This court has not relied on, has reached the same result with respect to plea agreements finding the language too general, even when they carve out specific exceptions. So it's rejected the idea that the existence of specific exceptions means that no other exceptions can be read into the agreement. Does that make any sense? You're asking us to do a contract interpretation theory that you say hasn't been addressed by our previous cases. The fact that the parties to this agreement kind of go out of their way to preserve the right that you're talking about, but only in the appellate process and not in the 2255 process, are we risking nullifying that understanding of the parties? In other words, why draft it this way if you intend this to be available in 2255 as well? I think there's numerous terms in this plea agreement that are superfluous based on the background principles of this court's case law. For example, the same provision carves out the ability to challenge the plea as not knowing and not voluntary, and that's something that Mr. Jones would have been able to bring, notwithstanding the language. So I view that exception to the direct appeal waiver as codifying an understanding based on the court's background case law, but not as telling us anything about what's true in the collateral review context. I think this last point about the court's case law in White and Leal also serves to distinguish this case from the other out-of-circuit cases that the government cites in its 28J letter. None of those cases was decided against the backdrop of this court's precedent in White and its follow-on cases, and as a result, most of those courts did not address whether the text of the waiver itself covered the 2255 motion at issue. So that's true as a legal matter, and there's also the point of factual distinction that when the parties in those other plea agreements were negotiating the contract, they weren't operating against the backdrop of this court's precedent, and so that doesn't tell us anything about the intent of those other parties, all of which is to say that this court could fine for Mr. Jones on our contract interpretation argument without creating any sort of circuit split. If there are no other questions, I would reserve the remainder of my time for rebuttal. Good morning. May it please the court, Amy Mitchell for the United States. In its published decision in Caldwell, this court enforced an identical collateral review waiver to preclude Caldwell's otherwise valid Davis claim. The rule of orderliness requires this panel to follow that decision. In that decision, the court— But you make an opposing counsel's argument that they're presenting different theories that were specifically reserved in Caldwell. With regard to the contract interpretation issue as far as the language of the waiver itself, the one in Caldwell is identical. Now, the primary concern there— The language is identical. Yes, the language. I think you've heard opposing counsel making the point that the theories presented in Caldwell were simply different from the theories presented here. They were, but I think a lot of those same theories— I don't think—a lot of those same theories were presented in Brooks. Well, that is not—that's an unpublished decision, but those additional arguments were made there and the court rejected them. It rejected the contract argument? It rejected an argument based on exactly the same case law that Mr. Jones is citing here. In support of his— Did they reject a contract argument? It did not—okay. Brooks did not expressly raise a contract argument, but it raised an argument based on the exact same cases for the same reasons. Well, did the cases talk about contracts or not? I mean, I'm not sure I understand the distinction you're trying to make here. The cases that—so Brooks talked about White, Picasso, Lucas, and Spruill, all cases that are cited here. And those cases are distinguishable from the case here. In particular, in Spruill and White, those defendants' actual conduct never met the definition of the crime with which they were convicted. So at the time they entered their guilty pleas, they did not satisfy the conduct required to be convicted. Here, that's not the case. At the time this contract was entered into, Mr. Jones was pleading guilty to an offense that he met the elements of at that time. The same is true of the statutory maximum at that time. Well, we now know there is no such offense and there was no such offense. It's not like it existed and it was wiped out. It's unconstitutional. It never existed, not validly. So I'm not sure I understand your point. I think that goes more to looking really at the nature of this agreement at the time it was made. You know, this is really a change in law case. This is not contract interpretation. This is a change in law. And what this Court has said repeatedly, not just in Caldwell, but also in Barnes and Creedell Burns, is that a change in law does not invalidate this type of collateral review waiver or appellate waiver. That gets to whether the agreement was entered into knowingly. Yes. Right, but I, unless I'm misunderstanding, I think the opposing counsel is not making that argument, or at least they're making other arguments on top of that. So I'm not sure referring to that really deals with their argument today. I'm sorry to understand the last part of what you said. I guess I'm not sure why the change in law affects the contract interpretation argument. Because it's the change in law that makes us look at that contract differently in hindsight than we looked at it, than the party's understanding was at the time. What are the words that, I assume we're talking about interpreting paragraph 11. What are the words in that paragraph that you think are implicated by this change in law notion? The waiver language itself? Or maybe I'm misunderstanding your argument. I'm just trying to get at the essence of your argument. Okay, so Mr. Jones agreed to waive his right under 1291 and 3742 to appeal from his convictions and sentences. Same thing with collateral proceedings, except for to challenge the voluntariness of the guilty plea or the waiver and to bring a claim of ineffective assistance of counsel. And neither of those are occurring here. I take it their point is that this is the sentence exceeding the statutory maximum. Let me turn to that. So the argument there is that the statutory maximum should have been zero because the crime has now been declared unconstitutional essentially. I think pointing to those out-of-circuit cases, like the 11th Circuit in Keene and the 9th Circuit in Portis, it makes sense that the statutory maximum isn't some moving target. I mean, we can never have really a binding valid plea agreement if the terms weren't understood by both parties at the time they're entered into. So the statutory maximum is actually the penalty that was enforced at the time. I see. Your point is that this sentence exceeding the statutory maximum, that has to be analyzed based on the law in effect at the time of the agreement. Correct. And that's how you're changing law. Okay, got it. And also— I think your point is that's how other circuits have looked at it. I'm sorry? Your point is that, on top of your change in law point, that that's how other circuits have looked at it. Yes. Do we not have any case law on that particular question? No, I do not believe so. Okay, so the question is whether we should join good all and all these other cases or split with them. Is there already a split on this issue, or are you saying that the other side will be creating a split? I'm sorry, I didn't understand what you said. You're saying that other circuits have gone in the government's direction on this point. Yes. What I'm asking, and I'll ask opposing counsel as well, are there any cases on their side, or is this essentially creating a split? The Fourth Circuit has accepted from—takes the opposite view, but that's really based on the retroactivity of the Davis decision. I would add this point, that using that date, understanding the statutory maximum at the time of the sentencing, is true of the contractual nature of plea agreements. See, I just have a total disconnect here. He reserved the right to appeal a statutory maximum. What he thought was a statutory maximum, there was no statutory maximum. There never was. There was never an enforceable statutory maximum. We now know from the Supreme Court. You can't say, well, it existed at the time, but it no longer existed. It never existed. It was never enforceable legally. I think that sort of defies our reality here. It's not defying reality. The Supreme Court says no, that's an invalid conviction. There's no conviction, there's no statutory maximum. It's zero. But again, what we're asking the court to do is to consider the statutory maximum to be what's considered . . . I'm telling you, that's the fiction. That would be a fiction. There's no conviction, therefore there's no statutory maximum. I mean, he's being sentenced above zero. All right, well, another approach that the Sixth Circuit takes in Goodall may help resolve your question some. Jones is actually attacking his conviction, not his sentence. The Ninth Circuit. I'm sorry? You mean the Ninth Circuit, I assume. I want to make sure we're talking about the same case. The Sixth Circuit in Goodall. Did I take it there wrong? All right. Go ahead, I'm sorry. In Goodall, the court points out that that distinction between the conviction and sentence is important because when that plea is entered into, when that contract is entered into, the defendant and the government know the contours of the conviction and that's different than a sentence because a sentence happens afterwards. One thing I would like to go back to and point out is the standard of review here. After Ms. Barlow's last 28-J letter, the government agrees that those issues that were actually considered by the district court are up for de novo review. However, the remainder of their arguments are foreclosed and should this court even decide to address those issues, it should do so under plain error. Mr. Jones is asking this court to extend a precedent in a way that this court has not decided prior to this, which means it was not clear or obvious error. I have a question about the habeas statute. It specifically says that we're talking about a federal conviction here that you can challenge under the habeas statute that the sentence was in excess of the maximum authorized by law. What do we do with federal precedent that basically says if you could have raised it on directive, you must, and if you didn't, you can't raise it in a habeas proceeding? What do we do with that in the language that specifically says you can raise in habeas a challenge that the sentence was in excess of the statutory maximum? How do we reconcile that? Are you asking me about procedural defaults in this circumstance? I'm asking you does it apply, I guess. Are you raising it? Does it apply? What do we do with that language in the habeas? At the time that we initially responded to both of the Jones cases in district court, the government was not pressing procedural defaults in cases like this. That changed about a year later, which is why you see procedural default being raised in Caldwell because it was initially responded to after the evolution of the policy. We did not raise procedural default here, so I don't think that that's on the table at this point for us, even though it would certainly be helpful to us. All right, so you're saying that he is permitted to bring a challenge that his sentence is in excess of the statutory maximum under 2255. You're not challenging, you're saying he can do that even though he did not raise it in direct appeal. He cannot do that in this circumstance because . . . Ms. Barlow, has this court ever applied this statutory maximum standard in habeas, and it has in an unpublished case, and that's Hollins. The difference there is that in Hollins, his sentence always exceeded the statutory maximum. I think, again, what we're asking the court to do is to look at this like a change in law case and to apply the same standards it did in Caldwell and Brooks and Barnes and Burns. With that, if the court has no further questions, I will give the rest of my time back. Thank you. The two points I'd primarily like to address are the government's forfeiture arguments and these arguments about the change in law. There's no forfeiture problem here because Mr. Jones raised the statutory maximum exception below as the government concedes, and that necessarily implicates this court's cases holding that sentences exceeding the statutory maximum when a plea agreement contains such a sentence, waivers of appellate and collateral review rights are unenforceable, and the argument that even if the enforceability of the provision is not clear, that the agreement must be drafted very specifically to encompass such a challenge. What do you make of the distinction drawn in cases like Goodall about convictions versus sentences, and that this is a conviction case, not a sentence case? Yes, so we believe that a challenge to a conviction under our contract enforcement argument is even more viable than a challenge to a sentence, and the reason for that goes back to the severability principles I was talking about before. Does that put us into collision with Goodall? In other words, are you saying Goodall was wrong, or is Goodall distinguishable? I think that Goodall is incorrect on that point, but I think it's a product of the way they've described their illegal sentence exception, and the differences between that and the way this court has described its statutory maximum exception. So as a matter of this court's precedent, the reason for the statutory maximum exception is because the sentence is not authorized by law. But it's not looking at, going back to paragraph 11, when you talk about wanting to challenge sentences exceeding statutory maximums, I don't think it's crazy to say that's about a sentencing level error as opposed to a conviction level error. That may not be right, but it's not crazy, is it? I don't think it's crazy as a matter of interpreting that text in the plea agreement, but I do think that it's wrong as a matter of interpreting the background principles that underlie finding the waiver unenforceable when the sentence exceeds the statutory maximum. That line of cases, so Kim is a good example in footnote 1, it describes this exception as coming from the reality that a district court cannot impose a sentence unauthorized by law. And that's true where the sentence exceeds the statutory maximum, but it's equally true where the crime of conviction is invalid, which we know was the case at the time, because Davis is retroactive. Do you have any circuit cases that take your view on this rather than Goodall? I think that if you look at Vowell and Portis together from the Sixth Circuit, they describe the, in Vowell it was interpreting an agreement that did not expressly exempt statutory maximum sentences from the collateral attack waiver, whereas in Portis the plea agreement specifically described statutory maximum. I thought Portis had language similar to Goodall. The only fair reading of a statutory maximum carve-out that comes with a collateral attack waiver is that it applies only to sentences. That's right, Your Honor, but I think that, I think Portis has to be read against the backdrop of Vowell. So one of the bases of distinction that Chief Judge Sutton draws in Portis from Vowell is that in Vowell the collateral attack waiver did not exempt sentences above the statutory maximum expressly, and the court read in a background principle about sentences not authorized by law, whereas in Portis Chief Judge Sutton says whatever it means as a background principle when the collateral attack waiver is not expressed, when it uses the word statutory maximum exception in the plea agreement, we're going to interpret that according to the statutory maximum at the time, but here there's no description of a statutory maximum exception to the collateral attack waiver, and I also think that because of this court's case law in Kim, we have this background principle that comes from which sentences are authorized by law as opposed to which sentences exceed the number of years the statute stated at the time. And the only other point I want to, oh, I'm sorry. I see my time has expired. Thank you. We have your argument. Thank you.